IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LORI E. CHILDE,

      Plaintiff,　　　　　　　　　　No. 2:11-cv-1007 DAD

    vs.

CAROLYN W. COLVIN,　　　　　　　ORDER
Commissioner of Social Security,

      Defendant.
_____/

        This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is denied, defendant's motion is granted, and the decision of the Commissioner of Social Security (Commissioner) is affirmed.

**PROCEDURAL BACKGROUND**

        In a decision dated April 14, 2004, plaintiff was found to be disabled as of January 29, 2002, and thus entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act). (Transcript (Tr.) at 12.) However, on January 27, 2006, after a continuing disability review was conducted, plaintiff was found to have experienced medical improvement and to be no longer disabled as of January 1, 2006. (Id. at 12, 22-24, 106-109).

1

Thereafter, plaintiff requested a hearing and a hearing was held before an Administrative Law Judge (ALJ) on October 26, 2009.  (Id. at 467-505.)  Plaintiff was represented by counsel and testified at the administrative hearing.  In a decision issued on February 11, 2010, the ALJ found that plaintiff's disability ended as of January 1, 2006.  (Id. at 21.)  The ALJ entered the following findings:

> 1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated April 14, 2004.  This is known as the "comparison point decision" or CPD.
>
> 2. At the time of the CPD, the claimant had the following medically determinable impairments: depression, anxiety, and stress disorder.  These impairments were found to result in the residual functional capacity of claimant not capable of performing even simple routine tasks.
>
> 3. Through January 1, 2006, the date the claimant's disability ended, the claimant did not engage in substantial gainful activity (20 CFR 404.1594(f)(1)).
>
> 4. The medical evidence establishes that the claimant did not develop any additional impairment after the CPD through January 1, 2006.  Thus, the claimant continued to have the same impairments that she had at the time of the CPD.
>
> 5. Since January 1, 2006, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> 6. Medical improvement occurred as of January 1, 2006 (20 CFR 404.1594(b)(1)).
>
> 7. After careful consideration of the entire record, the undersigned finds that, as of January 1, 2006, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  she is limited to simple routine tasks with no frequent interaction with the public, co-workers or supervisors.
>
> 8. The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii)).
>
> 9. As of January 1, 2006, the claimant's impairments were severe (20 CFR 404.1594(f)(6)).

/////

10. As of January 1, 2006, the claimant was unable to perform past relevant work (20 CFR 404.1565).

11. On January 1, 2006, the claimant was a younger individual age 18-49 (20 CFR 404.1563).

12. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

13. Beginning on January 1, 2006, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

14. As of January 1, 2006, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

15. The claimant's disability ended as of January 1, 2006 (20 CFR 404.1594(f)(8)).

(Id. at 13-21.)

On January 14, 2011, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Id. at 4-6.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 14, 2011.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

/////

1  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401
2  (1971)).

3        A reviewing court must consider the record as a whole, weighing both the
4  evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d
5  at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of
6  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If
7  substantial evidence supports the administrative findings, or if there is conflicting evidence
8  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,
9  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an
10 improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d
11 1335, 1338 (9th Cir. 1988).

12       To determine if a claimant continues to be disabled for purposes of a DIB claim
13 the ALJ must follow an eight-step sequential evaluation process.  20 C.F.R. § 404.1594.  The
14 first step is to determine whether the claimant is presently engaging in substantial gainful
15 activity.  If so, the claimant is no longer disabled.  20 C.F.R. § 404.1594(f)(1).  The second step
16 is to determine whether the claimant has an impairment or combination of impairments which
17 meets or medically equals an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix I of
18 the Social Security regulations.  20 C.F.R. §§ 404.1520(d), 416.1525 and 404.1526.  If so, the
19 claimant's disability continues.  20 C.F.R. § 404.1594(f)(2).

20       At step three, the ALJ must determine if medical improvement has occurred
21 which results in a decrease in the medical severity of the claimant's impairments.  20 C.F.R. §
22 404.1594(f)(3).  If so, the analysis proceeds to the fourth step.  If not, the analysis proceeds to the
23 fifth step.

24       At step four, the ALJ must determine if any medical improvement is related to the
25 ability to work.  20 C.F.R. § 404.1594(f)(4).  At step five, the ALJ must determine if an
26 exception to medical improvement applies.  20 C.F.R. § 404.1594(d)-(e).  If certain exceptions

apply, the analysis proceeds to the next step. If other exceptions apply, the claimant is no longer disabled. If no exceptions apply, the claimant's disability continues.

At step six, the ALJ must determine whether the claimant's impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). If not, the claimant is no longer disabled. At step seven, the ALJ must assess the claimant's residual functional capacity and determine if he or she can perform past relevant work. 20 C.F.R. § 404.1594(f)(7). If so, the claimant is no longer disabled.

At step eight, the ALJ must determine whether the claimant can perform any other substantial gainful activity. 20 C.F.R. § 404.1594(f)(8). If so, the claimant is no longer disabled. If not, the claimant's disability continues.

**APPLICATION**

In her pending motion plaintiff argues that the ALJ committed the following three principal errors in finding her no longer disabled: (1) the ALJ erred in finding that plaintiff's lack of consistent medical treatment was indicative of medical improvement; (2) the ALJ improperly rejected plaintiff's own testimony concerning her subjective symptoms without a clear and convincing reason for doing so; and (3) there was not sufficient evidence to support the ALJ's finding that plaintiff was no longer disabled.

**I.    Lack of Medical Treatment**

Plaintiff argues that the evidence of record demonstrates that her failure to seek consistent medical treatment was not indicative of medical improvement and, therefore, the ALJ's finding that it did was erroneous. (Pl.'s MSJ (Doc. No. 18) at 26-31.[1]) In this regard, plaintiff argues that while failure to seek medical treatment may indicate medical improvement, the ALJ must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek treatment. (Id. at 26.)

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1    The ALJ's opinion, however, did not find that plaintiff's failure to seek mental
2 health treatment was indicative of medical improvement. Plaintiff directs the court to the ALJ's
3 opinion at pages 16 and 19 of the administrative transcript. (Pl.'s MSJ (Doc. No. 18) at 28.) On
4 page 16, however, the ALJ's opinion simply reads in relevant part:

> The record reflects that since claimant's CPD she did not attempt
> and has not received any mental health treatment. In addition, she
> failed to keep a psychiatric consultative examination in January
> 2006 causing her disability benefits to be ceased per 20 CFR
> 404.1594(e)(2).

(Tr. at 16.) This section of the ALJ's opinion, however, was clearly limited to attempting to
provide the chronological history of plaintiff's treatment. Moreover, this passage of the opinion
is followed by the ALJ's statement concerning the treatment received by plaintiff during 2007.
(Id.) This portion of the ALJ's opinion does not reflect a finding that plaintiff's failure to seek
treatment was indicative of medical improvement.

   Turning to page 19 of the administrative transcript cited by plaintiff in support of
her contention, the ALJ's opinion there reads in relevant part:

> In terms of the claimant's allegations, the current evidence shows
> that the claimant has not received mental health treatment since
> 2004, however, evaluation of the total evidence establishes that the
> claimant does experience some depression and anxiety related to
> her past.

(Id. at 19.) In this section of the opinion, however, the ALJ was only evaluating plaintiff's own
testimony concerning her subjective symptoms. This is made clear by the paragraph of the
opinion immediately preceding the above-quoted language which reads:

> After considering the evidence of record, the undersigned finds that
> the claimant's medically determinable impairments could have
> reasonably been expected to produced the alleged symptoms;
> however, the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not credible
> to the extent they are inconsistent with the residual functional
> capacity assessment *for the reasons explained below*.

(Id.) (emphasis added). Again, plaintiff has taken the cited portions of the ALJ's opinion out of
context. Read as a whole, the ALJ's opinion does not reflect a finding that plaintiff's failure to

seek mental health treatment was indicative of medical improvement.

Plaintiff's contention that the ALJ erred in finding that her lack of consistent medical treatment was indicative of medical improvement is based upon a mischaracterization of the ALJ's opinion and is therefore unpersuasive. Accordingly, plaintiff is not entitled to relief with respect to this claim.

## II.   Plaintiff's Testimony

Plaintiff also argues that the ALJ improperly rejected her own testimony regarding her subjective symptoms. (Pl.'s MSJ (Doc. No. 18) at 31-33.) In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among

other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms to some degree, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity finding. (Tr. at 19.) In making this finding, the ALJ offered the following reasons for rejecting plaintiff's testimony:

> Given the foregoing evidence, the undersigned finds that the claimant's impairments have resulted in some current restriction in her functional abilities. However, based on the medical evidence, testimony presented at the hearing, daily activities, and claimant currently working part-time the undersigned concludes that the claimant is capable of performing simple routine repetitive tasks and unskilled work, but with limitations that there be no frequent interaction with coworkers, supervisors and the public.

(Tr. at 19.)

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based *solely* on a lack of medical evidence to fully corroborate the alleged severity . . ." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (emphasis added). Nonetheless, lack of medical evidence is a relevant factor for the ALJ to consider in his credibility analysis. (Id. at 681.)

Here, as noted by the ALJ in the portion of his opinion dealing with the medical opinion evidence, "[w]hile offering some slight variations, no examining or non-examining

1  physician of record has precluded the claimant's ability to perform" at the residual functional
2  capacity found by the ALJ, and the "record is devoid of any objective evidence which would
3  suggest any additional limitations." (Tr. at 19.)  The court notes that the November 13, 2009
4  findings of examining physician Dr. Travis Owens, the October 25, 2007 findings of examining
5  physician Dr. Deborah Schmidt, and the April 11, 2007 findings of examining physician Dr.
6  Pavitar Cheema are substantially similar with respect to their findings of plaintiff's functional
7  limitations and are consistent with the ALJ's residual functional capacity finding.  (Id. at 247,
8  290-91, 318.)  The ALJ is permitted to consider such evidence in evaluating a claimant's
9  credibility.  See Light, 119 F.3d at 792 (in weighing claimants credibility ALJ may consider
10 "testimony from physicians").

11         Moreover, in this case the ALJ did not reject plaintiff's subjective complaints
12 based solely on a lack of medical evidence.  As noted above, the ALJ also rejected plaintiff's
13 subjective complaints based on plaintiff's testimony, the daily activities she engaged in and the
14 fact that she was working part-time.  (Tr. at 19.)  In this regard, plaintiff testified that in March of
15 2008 she began assisting her neighbor by getting "his breakfast ready, dump[ing] his garbage,
16 things like that."  (Id. at 477.)  Plaintiff was later hired as a live-in assistant, providing care for a
17 disabled gentleman.  (Id. at 477-78.)  In that role plaintiff worked one to one and a half hours a
18 day doing "dishes, mopping the floor, vacuuming, dusting, cleaning of the bathroom and kitchen,
19 cooking every night and doing dishes, [and] miscellaneous errands," including grocery shopping
20 and providing transportation to appointments.  (Id. at 478.).

21         Plaintiff testified at the administrative hearing that in the summer of 2008, she
22 attended "Placer Adult School," four to five hours a day, five days a week to "update [her]
23 computer skills . . . ."  (Id. at 493.)  Plaintiff also testified that she believed she could return to
24 work in an office setting where she did not have to talk to more than five to ten people and that
25 she had not been on any medication to treat her depression or anxiety for a year.  (Id. at 496,
26 501.)

As noted, it appears that the ALJ may have also discredited plaintiff's testimony due, in part, to her failure to seek and obtain treatment. In evaluating the plaintiff's testimony the ALJ observed that plaintiff had not received mental health treatment since 2004. (Id. at 19.) If so, reliance on this factor would constitute error under the circumstances presented here because plaintiff testified that part of the reason she failed to obtain treatment was that she was homeless. See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) ("disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.").

However, even if any such error occurred it would be harmless because, as noted above, the ALJ provided additional specific, clear and convincing reasons for rejecting plaintiff's testimony that were valid and supported by substantial evidence. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("In addition, several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); Carmickle v. Comm'r, Social Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding that ALJ's reliance on two invalid reasons in support of adverse credibility determination was harmless where remaining reasons were adequately supported by substantial evidence); Asberry v. Astrue, No. CV 12-2565 RNB, 2013 WL 140218, at *3-4 (C.D. Cal. Jan. 9, 2013) ("However, the Court finds that the ALJ's error in relying on this third reason was harmless because the ALJ's two other reasons and ultimate credibility determination were supported by substantial evidence.").

For the reasons stated above, the court finds that the ALJ did offer specific, clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her subjective symptoms. Accordingly, plaintiff is not entitled to relief with respect to this claim.

**III.    Sufficient Evidence**

Plaintiff argues that there was not sufficient evidence to support the ALJ's finding that she was no longer disabled. In this vein, plaintiff argues that the ALJ erred by improperly relying on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2

("grids") and, therefore, in failing to seek testimony from a vocational expert. (Pl.'s MSJ (Doc. No. 18) at 18-20.) Specifically, plaintiff argues that the "grids" do not apply to her because her impairments of depression, anxiety and stress disorder are nonexertional and the "grids" only apply to exertional limitations. (Id. at 19.)

"The ALJ can use the grids without vocational expert testimony when a non-exertional limitation is alleged because the grids 'provide for the evaluation of claimants asserting both exertional and non-exertional limitations.'" Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (citing Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir. 1986)). See also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids."). The grids are inapplicable and a vocational expert is necessary only "[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations." Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).

Here, the ALJ's opinion acknowledged that as of January 1, 2006, plaintiff's ability to work at all exertional levels had been limited by her non-exertional limitations but also found that those non-exertional limitations had "little or no effect on the occupational base of unskilled work at all exertional levels." (Tr. at 20.) The ALJ's use of the grids in this case was, therefore, not improper. See Cowen v. Commissioner of Social Sec., 400 Fed. Appx. 275, 277 (9th Cir. 2010) ("If an ALJ finds a claimant's nonexertional limitations do not significantly affect his exertional capabilities, the ALJ may use the medical-vocational guidelines ('the grids') in lieu of calling a vocational expert."); Landa v. Astrue, 283 Fed. Appx. 556, 558 (9th Cir. 2008)[2] (grids inapplicable and vocational expert required when a non-exertional limitation is sufficiently severe to significantly limit the range of work); Martin v. Astrue, No. 2:12-cv-0033 KJN, 2013 WL 552932, at *9 (E.D. Cal. Feb. 13, 2013) ("plaintiff's moderate social functioning limitations

---

[2] Citation to these unpublished Ninth Circuit opinions is appropriate pursuant to Ninth Circuit Rule 36-3(b).

were not sufficiently severe to require vocational expert testimony."); Trefcer v. Astrue, No. CIV S-11-1436 GGH, 2012 WL 2522147, at *7 (E.D. Cal. June 27, 2012) ("The Ninth Circuit has already held that moderate mental limitations do not even require vocational expert testimony."); Angulo v. Astrue, No. 1:07-cv-1681-TAG, 2009 WL 817506, at *10 (E.D. Cal. Mar. 27, 2009) ("Put conversely, the ALJ may rely solely on the grids, without the testimony of a vocational expert, to resolve cases where it is clear that a claimant's nonexertional limitations do not significantly erode the relevant job base.").

Plaintiff also argues that "given the facts of this claim" the ALJ should have procured the services of a qualified medical expert. (Pl.'s MSJ (Doc. No. 18) at 20.) Specifically, plaintiff argues that the ALJ "rejected the medical evaluations" completed by Dr. Schmidt on October 25, 2007, and Dr. Owens on November 13, 2009, "made his own psychiatric evaluation of plaintiff's limitations" and "improperly awarded significant weight" to the opinions of Dr. Gross and Dr. Cheema. (Id. at 21, 23-24.)

However, the ALJ did not reject the opinions of Dr. Schmidt and Dr. Owens and instead specifically acknowledged those opinions in making his residual functional capacity finding. (See Tr. at 16-18.) Moreover, Dr. Schmidt's opinion and Dr. Owens' opinion were consistent with the ALJ's finding that plaintiff had the residual functional capacity to perform a full range of work but was limited to simple routine tasks with no frequent interaction with the public, co-workers or supervisors. (Id. at 15.)

In this regard, Dr. Schmidt's October 25, 2007 evaluation found that plaintiff "possesses the intellectual ability to carry out and understand simple to mildly complex instructions and tasks" and "was mostly socially appropriate," however, "it is also possible that she may have difficulty relating in a consistently emotionally appropriate manner when presented with various stressors and/or change." (Id. at 290-91.) Similarly, Dr. Owens' November 13, 2009 evaluation found that plaintiff's "ability to understand, remember, and carry out simple instructions appears to be unimpaired" and her "ability to respond appropriately to coworkers,

supervisors, and the public is mildly to moderately impaired." (Id. at 247.)  Finally, the opinions of Dr. Schmidt and Dr. Owens are consistent with the April 11, 2007 report of examining physician Dr. Pavitar Cheema who found that plaintiff "should be able to interact with the public, co-workers and supervisors" and "should be able to perform simple repetitive tasks." (Id. at 318.)

For all of the reasons stated above, the court finds that there was sufficient evidence to support the ALJ's finding that plaintiff was no longer disabled.  Accordingly, plaintiff is not entitled to relief with respect to this claim.

## CONCLUSION

The court has found that plaintiff is not entitled to summary judgment in her favor with respect to any of her arguments.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 17) is denied;

2. Defendant's cross-motion for summary judgment (Doc. No. 20) is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: March 13, 2013.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1/orders.soc sec/childe1007.order